**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
08/04/2014

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 12-32096 |
| Cody W. Smith, | § | |
| | § | |
| Debtor. | § | Chapter 7 |
| | § | |
| Lowell T. Cage, Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 14-03115 |
| | § | |
| Cody W. Smith & Tracy G. Smith, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION REGARDING DEFENDANTS' SUPPLEMENTAL AND
AMENDED MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A
CLAIM**
[Relates to Adv. Doc. No. 17]

The Court writes this Memorandum Opinion because it concerns an important homestead

issue: whether the Fifth Circuit's recent holding in the Chapter 13 case of *Viegelahn v. Frost (In

re Frost)*, 744 F.3d 384 (5th Cir. 2014) applies in Chapter 7 cases. In the case at bar, the Chapter

7 trustee contends that it does; the Debtor and his wife argue that it does not. For the reasons set

forth herein, this Court concludes that *Frost* does apply in this Chapter 7 case.

## I. PROCEDURAL BACKGROUND

On April 11, 2014, Lowell T. Cage, the Chapter 7 trustee in the main case (the Trustee),

initiated an adversary proceeding against Cody W. Smith (the Debtor) and his wife, Tracy G.

Smith (collectively, the Defendants), requesting the turnover of proceeds from the post-petition

sale of the Defendants' homestead located at 3419 Locke Lane, Houston, Texas 77027 (the

Property).  [Adv. Doc. No. 1].  Pending before this Court is the Defendants' Supplemental and Amended Motion to Dismiss Complaint for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) as Incorporated by Fed. R. Bankr. P. 7012 (the Motion).  [Adv. Doc. No. 17].  In the Motion, the Defendants seek dismissal of this suit on the grounds that the Property was timely exempted without objection and sold after the Debtor received his discharge; and that, therefore, the proceeds from the sale of the Property are exempt from the Debtor's pre-petition creditors. [*Id.* at pp. 24–25, ¶¶ 120 & 124].  The Motion thus seeks dismissal of the Trustee's complaint for failure to state a claim pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(6).[1]  [*Id.* at p. 2, ¶ 1].

The Trustee filed a response in opposition to the Motion on June 20, 2014 (the Response).  [Adv. Doc. No. 24].  In the Response, the Trustee argues that the Motion should be denied because the proceeds from the sale of the Property automatically reverted to the bankruptcy estate 181 days after the sale of the Property due to the Debtor's failure to reinvest the proceeds in a new homestead.  [*Id.* at pp. 12–13, ¶ 31].  The Trustee's argument is thus that the six-month proceeds exemption provision under Texas law is just as applicable in Chapter 7 cases as it is in Chapter 13 cases.  The Trustee's argument turns on the holding in *Frost*, a Fifth Circuit opinion issued on March 5, 2014 involving a Chapter 13 debtor, which interprets the statutory language of Texas Property Code § 41.001 as it applies in bankruptcy.  [*Id.*].

On June 27, 2014, the Debtor replied to the Response (the Reply) essentially reiterating the arguments articulated in the Motion.  [Adv. Doc. No. 25].

---

[1] Federal Rule of Bankruptcy Procedure 7012(b) provides that Federal Rule of Civil Procedure 12 is applicable in adversary proceedings. FED. R. BANKR. P. 7012(b).

On July 8, 2014, this Court held a hearing on the Motion, and counsel for the parties made oral arguments. The Court then took the matter under advisement. Subsequently, on July 17, 2014, the Debtor filed a supplemental brief in support of the Motion.

The Court, having now considered the Motion, the Response, the Reply, the oral arguments of counsel, and the supplemental brief, denies the Motion for the reasons set forth herein.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated by Federal Rules of Bankruptcy Procedure 7052 and 9014.   To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.  The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II.    FINDINGS OF FACT

The parties do not dispute the relevant facts, which are as follows:

1.  The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code[2] on March 20, 2012 (the Petition Date).  [Main Case Doc. No. 1].

2.  On April 3, 2012, the Debtor exempted the Property as his homestead under Texas law pursuant to Texas Constitution Article XVI, §§ 50, 51 and Texas Property Code §§ 41.001 and 41.002.  [Main Case Doc. No. 16, p. 15].  Neither the Trustee nor any creditor filed an objection to the Debtor's claimed homestead exemption of the Property. [Adv. Doc. No. 24, p. 2, ¶ 3].

---

[2] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.  The one exception is that there is frequent reference to § 41.001, which is a reference to the Texas Property Code.

3. On June 14, 2012, the Clerk of Court sent a notice to all creditors that the Trustee may make a distribution to creditors in the future and that therefore proofs of claim must be filed by no later than September 12, 2012. [Main Case Doc. No. 31]. Thus, this is an "asset case" in which the Trustee will liquidate non-exempt assets and make distributions to creditors.

4. On April 25, 2013, this Court issued an order discharging the Debtor. [Main Case Doc. No. 201].

5. On June 21, 2013, the Defendants sold the Property and, after payment of the mortgage, taxes, and other closing costs, received net sale proceeds in the amount of $813,935.77 (the Proceeds). [Adv. Doc. No. 24, p. 2, ¶ 4].

6. The Defendants did not reinvest the Proceeds within six months of the sale of the Property. [*Id.*].

7. On April 11, 2014, the Trustee initiated this adversary proceeding seeking turnover of the Proceeds from the Debtor on the basis that the Proceeds are non-exempt and therefore property of the Debtor's Chapter 7 estate. [Adv. Doc. No. 1].

8. The main case remains open while the Trustee continues to locate and liquidate assets for distribution to creditors.

### III.   CONCLUSIONS OF LAW

**A. Jurisdiction**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it affects the administration of this Chapter 7 estate. Further, it is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (E) because it is a suit to determine the

allowance or disallowance of exemptions from property of the estate and the relief sought is an order to turn over property of the estate. Finally, this dispute is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

### B. Venue

Venue is proper pursuant to 28 U.S.C. § 1409(a).

### C. Constitutional Authority to Enter a Final Order

The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' authority to enter a final order. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Here, however, there is no *Stern* concern because denying the Motion does not end the litigation on the merits; therefore, there is no final order to be entered at this time. *See, e.g., In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) ("[A]n order in an individual adversary proceeding is not final unless it ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.") (internal quotation marks omitted); *Gazes v. Kesikrodis (In re Ted A. Petras Furs, Inc.)*, 100 F.3d 943, 1996 WL 49255, at *2 (2d Cir. 1996) (holding that an order denying a motion to dismiss an adversary proceeding is not a final order).

### D. History of "The 6-Month Rule" Regarding Use of Proceeds from the Sale of a Texas Homestead

The Debtor's position in this dispute is heavily ladened with the notion that the Texas statute governing the exemption of proceeds from the sale of a homestead exists to promote one—*and only one*—public policy: the prevention of homelessness. The Debtor is off the mark. A review of the history of the Texas homestead proceeds exemption law underscores that the

Texas legislature passed this statute not only to prevent homelessness, but also to provide for collection of debts. *See, e.g.*, *Rabon v. Tolliver*, 188 S.W.2d 594, 595 (Tex. Civ. App.— Galveston 1945). ("But, not having in any way so appropriated or placed such proceeds beyond the reach of creditors within that time, after expiration of such six months no further protection against garnishment or levy upon such funds by his creditors was afforded him."); *See also Hodes v. Diagnostic Experts of Austin, Inc.*, No. 03-09-00185-CV, 2010 WL 2867344 (Tex. App.—Austin July 22, 2010) (mem. op.) (affirming the district court's ruling enforcing a creditor's writ of garnishment on proceeds from the sale of a debtor's homestead that were not used within six months of the sale to purchase a new homestead); *see also Witt v. Teat*, 167 S.W. 302, 303 (Tex. Civ. App.—San Antonio 1914, writ ref'd) ("If it had been the intention of the Legislature to restrict the exemption to money received for a homestead, it could easily have said so . . . [t]he law grants six months in which it may be applied to the purchase of a homestead, and, until that time expires, it is exempt from levy of attachment or execution.").

Since its original drafting in 1845, the Texas Constitution has included a homestead protection provision preventing the forced sale of a debtor's homestead. TEX. CONST. of 1845, art. VII, § 22; *see also England v. FDIC (In re England)*, 975 F.2d 1168, 1172 (5th Cir. 1992). However, prior to the passage of the first proceeds exemption statute enacted in 1897, the sale of a homestead often resulted in the immediate garnishment of sale proceeds by creditors. *In re England*, 975 F.2d at 1174. Without any protection for sale proceeds, Texas residents "who voluntarily sold their homestead with the intention of investing the sale proceeds in another homestead were faced with the possibility of losing all of the proceeds to creditors." *Id*. In fact, Texas law, prior to the first proceeds exemption statute, explicitly stated that a debtor's voluntary sale of a homestead resulted in the proceeds being immediately subject to garnishment by

creditors. *See Moursund v. Priess*, 19 S.W. 775 (Tex. 1892) (citing *Mann v. Kelsey*, 12 S.W. 43 (Tex. 1888)). With no statutory protection in place for homestead sale proceeds, courts held that "it is the result of the voluntary act of the appellees in exchanging property fully protected by the law for that to which the law affords no such protection." *Mann*, 12 S.W. at 44.

In response to this harsh result, the Texas legislature, in 1897, passed Article 2396 to protect homestead sale proceeds from creditors. *In re England*, 975 F.2d at 1172. This Article prevented creditors from immediately garnishing the sale proceeds so that a debtor could, within six months, use the proceeds to purchase a new homestead and avoid homelessness (the 6-Month Rule).[3] *Id.* But, Article 2396 not only protected debtors; it also considered the interests of creditors by expressly shielding the proceeds from garnishment for **only** six months following the sale. *Id.* at 1175. The policy behind the 6-Month Rule is that if debtors are not going to reinvest the proceeds to purchase another homestead, then these proceeds should not be immune from creditors. *In re Evans*, 135 B.R. 261, 263 (Bankr. S. D. Tex. 1991). Consequently, creditors could seize or garnish the proceeds on the 181st day following the sale if the debtor failed to reinvest the proceeds in a new homestead.

The termination of the safe harbor period after six months, therefore, reflects the Texas legislature's attempt to balance two competing public policies—the need to minimize homelessness versus the need to afford creditors the opportunity to collect on their debts. Texas state courts have issued rulings over many years in conformity with the legislative intent to balance these competing interests. *See, e.g., Fairfield Fin. Grp., Inc. v. Synnott*, 300 S.W.3d

---

[3] Article 2396 read as follows: "The homestead of a family, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town, or village, consisting of a lot or lots, not to exceed in value five thousand dollars at the time of their designation as a homestead, without reference to the value of any improvements thereon; <u>provided, further, that the proceeds of the voluntary sale of the homestead shall not be subject to garnishment or forced sale within six months after such sale.</u>" (emphasis added). C.W. Raines, The Laws of Texas 1822-1897 131 (H.P.N. Gammel, Volume X, 1898).

316, 322 (Tex. App.—Austin 2009) ("After six months, the cash is a non-exempt personal asset subject to execution by creditors of the cash's owner."); *See also Hodes v. Diagnostic Experts of Austin, Inc.*, No. 03–09–00185–CV, 2010 WL 2867344, at *1 (Tex. App.Austin July 22, 2010) ("[P]roceeds from the sale of a homestead are exempt from seizure, but the exemption only lasts for six months."); *Ingram v. Summers*, 29 S.W.2d 447, 451 (Tex. Civ. App.—El Paso 1930) ("Therefore appellant here is attempting to subject a fund which constituted part of the proceeds of a voluntary sale of the homestead to garnishment, a thing which the statute says shall not be done until the expiration of six months."); *Barrera v. State*, No. 14-04-01030-CR, 2005 WL 1691037, at *3 (Tex. App.—Houston [14th Dist.] July 21, 2005) ("The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of the sale. The proceeds of a voluntary sale of the homestead are protected from creditors for six months, giving a reasonable time in which to invest the proceeds in another home.").

In 1985, the Texas Legislature replaced Article 2396 with § 41.001 of the Texas Property Code. *In re England*, 975 F.2d at 1172. Section 41.001's language is similar to the language of Article 2396 and clearly contains the same 6-Month Rule.[4] *Id.* Thus, § 41.001 allows a debtor to claim his homestead as exempt; however, this exemption is burdened with a statutory risk of losing the protection if the proceeds from the sale of the homestead are not reinvested in a new homestead within six months. *Id.; See also* § 41.001(c). In the same vein, if the debtor sells his homestead and reinvests some, but not all, of the proceeds in a new homestead, any surplus proceeds lose their exempt status and revert to the estate: "The object of the proceeds exemption

---

[4] "The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claims for six months after the date of sale." TEX. PROP. CODE § 41.001(c).

statute was *solely* to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of themselves." *In re England,* 975 F.2d at 1174-75.

In sum, the 6-Month Rule balances the interests of both debtors and creditors. The Fifth Circuit issued its ruling in *Frost* with this statutory history in play. This Court now reviews the holding in *Frost* in order to arrive at its ruling in the dispute at bar.

### E. The Fifth Circuit's Holding in *Viegelahn v. Frost (In re Frost)*

In *Frost*, the debtor, whose homestead was in Cibolo, Texas, filed a Chapter 13 petition. *In re Frost,* 744 F.3d at 385. The debtor timely claimed his homestead as exempt under § 41.001, and no one lodged an objection. *Id.* During the pendency of his Chapter 13 case, the debtor sold this property and used some of the proceeds for purposes other than purchasing a new homestead. *Id.* The trustee discovered this fact and challenged the debtor's exemption of those proceeds from the estate. *Id.* The trustee argued that because the debtor had failed to reinvest the proceeds in a new homestead within six months, those proceeds, by operation of law, became nonexempt property, which in turn became part of the bankruptcy estate. *Id.* In the trustee's view, this re-characterization occurred automatically on the 181st day after the sale. *Id.* The debtor argued that exempted property, and proceeds from the subsequent sale thereof, are permanently exempted from the estate and cannot later be re-characterized as non-exempt property subject to garnishment or seizure by pre-petition creditors. *Id.* at 386. The bankruptcy court ruled in the trustee's favor and the district court affirmed the bankruptcy court's ruling. *Id.* at 385-86. The debtor then appealed the district court's order to the Fifth Circuit. *Id.*

In affirming the district court's ruling, the Fifth Circuit emphasized that "[w]hen claiming an exemption under state law, it is important to remember that 'it is the *entire* state law

9

applicable on the filing date that is determinative.'" *Id.* at 386 (quoting *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 304 (5th Cir. 2001)).

The Fifth Circuit then stated that, pursuant to § 41.001, "while the homestead is permanently exempted from the bankruptcy estate, Texas law provides that the proceeds from the sale of a homestead are only exempt for six months after the sale." *In re Frost*, 744 F.3d at 386-87.  Moreover, the Fifth Circuit concluded that the filing of a bankruptcy petition does not, in any way, affect or change the 6-Month Rule:

> Finally, this interpretation gives effect to both the fact that the homestead exemption is in place at the petition filing date and that the state's law remains equally enforceable with regard to those in bankruptcy and non-bankruptcy. *See Owen v. Owen*, 500 U.S. 305, 308 (1991) ("Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemption at all."). Reading the statute to exempt property that would not be protected by state law "limits a State's power to restrict the scope of its exemptions." To rule otherwise would allow a debtor in bankruptcy to obtain the liquidity of [his] homestead at a much earlier date—and without the risk of exposing [himself] to creditors—than a debtor who had not filed.

*Id.* at 388.

Thus, the Chapter 13 trustee in *Frost* was successful in having the debtor's proceeds from the homestead sale declared to be non-exempt and forcing the debtor to turn over these proceeds to her for distribution to pre-petition creditors.  The Trustee in the case at bar argues that the same result should obtain here.  The Debtor disagrees.

### F.  Contrary to the Debtor's Position, *Frost* Applies to this Chapter 7 Case

In the dispute at bar, the Debtor argues that the holding in *Frost* is limited to Chapter 13 cases.  The Debtor's argument seems to be based on the following reasoning: (1) § 1306(a)(1) expressly sets forth that "property of the estate" in a Chapter 13 case includes property acquired by the debtor post-petition; (2) the proceeds from the homestead sale in *Frost* became non-

exempt after the filing of the debtor's Chapter 13 petition, but before his Chapter 13 case was closed; and (3) therefore, an estate was in existence at the time the proceeds became non-exempt and thus became property of the debtor's Chapter 13 estate subject to the trustee's control.  The Debtor contends that because Chapter 7 has no companion provision to § 1306(a)(1), there is no possible way for any property that became exempt after his Chapter 7 filing to later become "property of the estate."  Thus, so the Debtor's argument goes, because the Proceeds became exempt after the filing of his Chapter 7 petition, they cannot possibly be property of his Chapter 7 estate, subject to claims of his pre-petition creditors.  Moreover, the Debtor argues that even if the Proceeds became non-exempt due to the 6-Month Rule, they became non-exempt **after the petition date** and therefore cannot be property of the estate subject to the claims of pre-petition creditors, but rather can only be property of the Debtor subject solely to the claims of post-petition creditors.

It is certainly true that, in a Chapter 7 case, property of the estate consists solely of property in existence as of the date of the filing of the Chapter 7 petition. 11 U.S.C. § 541(a)(5); *see also In re Harris*, No. 13–50374, 2014 WL 3057095, at *2 (5th Cir. July 7, 2014) ("The filing of Chapter 7 petition creates an estate that comprises, with certain exceptions, all of the debtor's property at the time of filing.").  In this respect, the Debtor is entirely correct in stating that Chapter 7 has no companion provision to § 1306(a)(1).  However, the analysis does not end here.

As of the Petition Date, the applicable Texas homestead exemption statute in effect was § 41.001. *In re Zibman*, 268 F.3d at 304.  This characterization of the law as of the date of filing has long been referred to as the "snapshot rule."  *White v. Stump* was the first Supreme Court case to explain the "snapshot rule" without actually coining the name.  266 U.S. 310, 313 (1924).

11

In *White*, the debtor, a resident of Idaho, filed a bankruptcy petition. As of the date of the filing of his petition, he had never complied with the applicable Idaho statute for exempting one's homestead. *Id.* at 311. The applicable Idaho statute required that one file a declaration in the office of the county recorder declaring one's homestead and also representing that this property was occupied. *Id.* The exemption would arise only when this declaration was properly filed, and not before. *Id.* Further, until the exemption did arise, the applicable Idaho law provided that "[u]p to that time the land is subject to execution and attachment like other land; and where a levy is affected while the land is in that condition the subsequent making and filing of a declaration neither avoids the levy nor prevents a sale under it." *Id.*

In *White*, the debtor, having filed his bankruptcy petition without having properly declared his homestead under Idaho law, found himself in a predicament. Under § 70a of the Bankruptcy Act, the trustee stood in the shoes of any creditor who might have levied upon the debtor's property. *Id.* at 312-13. So, the debtor's wife, who was not in bankruptcy, filed a homestead declaration two months after the filing of her husband's bankruptcy petition, asserting that the property was exempt homestead for the benefit of both her husband and herself. *Id.* at 311. The trustee objected to this exemption, and the bankruptcy referee sustained this objection. *Id.* The district court, however, reversed this ruling, and the Ninth Circuit thereafter affirmed the district court's order. The trustee then appealed this order to the Supreme Court. *Id.*

The Supreme Court reversed the Ninth Circuit's ruling, basing its decision on what courts would subsequently refer to as the "snapshot rule:"

> The Bankruptcy Law does not directly grant or define any exemption, but directs, in section 6 (Comp. St. § 9590), that the bankrupt be allowed the exemptions 'prescribed by the state laws in force at the time of the filing of the petition'; in other words, it makes the state laws existing when the petition is filed the measure of the right to exemptions.

*Id.* at 312.

The Supreme Court's establishment of this "snapshot rule" meant that, in *White*, because the debtor had not properly declared his homestead under Idaho law prior to filing his bankruptcy petition, the trustee, as a hypothetical creditor under § 70a levying on the debtor's property, took title to this land for the benefit of creditors. *Id.* at 314. The "snapshot" of Idaho law in effect on the debtor's petition date expressly set forth that a subsequent declaration of homestead would not defeat a levy, and that is why the trustee ultimately prevailed in this dispute.

Nearly eighteen years later, the Supreme Court re-examined the "snapshot rule" under a more difficult set of facts in *Myers v. Matley*, 318 U.S. 622, 628 (1943). In *Myers*, the debtor consented to an involuntary petition that had been filed against him. *Id.* at 623. Approximately one month later, the debtor's wife, who was not in bankruptcy, filed her declaration in the county recorder claiming as a homestead a tract of land listed in her husband's bankruptcy schedules. *Id.* at 623-24. She also filed a petition in the bankruptcy court claiming the land as exempt. *Id.* The bankruptcy referee denied her claim, but the district court reversed this ruling, and the Ninth Circuit Court of Appeals affirmed the district court's order. *Id.* at 624. The trustee appealed this ruling to the Supreme Court. *Id.*

The trustee, citing § 70a of the Bankruptcy Act and the Supreme Court's holding in *White*, argued that his status as a hypothetical judgment creditor with the right to levy on the property, combined with the fact that the debtor had not filed his declaration prior to his

13

bankruptcy filing, gave him title to the property free and clear of any homestead exemption. *Id.*
at 624-25. The Supreme Court acknowledged that

> If the law of Nevada respecting homestead exemptions were like that of Idaho, or
> operated in the same way, White v. Stump would be in point... Our question then
> is whether, under the constitution and statutes of Nevada, a declaration of
> homestead would be effective as against a creditor to prevent a judicial sale of the
> property if made and recorded after levy but before sale thereunder. If it would, it
> must be equally effective as against the trustee, whose rights rise no higher than
> those of the supposed creditor and attach at the date of the inception of
> bankruptcy.

*Id.* at 626-27.

Turning to the applicable Nevada statute concerning homestead exemptions, the Supreme
Court noted that Nevada "entitles the debtor to his homestead exemption if the selection and
recording occurs at any time before actual sale under execution." *Id.* at 627. Thus, even though
the debtor's wife had filed the homestead declaration after the filing of the debtor's bankruptcy
petition, this declaration was valid because no actual sale of the homestead had occurred. *Id.* at
627-28. Unlike the trustee in *White*, the trustee in *Myers* did not prevail because the Nevada
homestead statute—unlike the Idaho homestead statute—tied the validity of the homestead
exemption not to the date of the creditor's levy or attachment, but rather to the date of the actual
execution sale.

While the outcomes in *White* and *Myers* are different insofar as the trustee prevailed in
*White*, but lost in *Myers*, the Supreme Court was entirely consistent in its application of the
"snapshot rule." In *White*, the Supreme Court took a "snapshot" of the applicable Idaho
homestead exemption statute on the date of the filing of the debtor's bankruptcy petition, and
concluded that this Idaho statute prevented the debtor from claiming his homestead exemption.
In *Myers*, the Supreme Court took a "snapshot" of the applicable Nevada homestead exemption
statute on the date of the filing of that debtor's bankruptcy petition, and concluded that this

Nevada statute allowed the debtor to exempt his homestead.  Although still captured at the time

of the filing of bankruptcy petition, the "snapshot" in *Myers* encompassed this more expansive—

albeit, conditional—aspect of Nevada state law.  The Supreme Court emphasized that its ruling

in *Myers* was in line with its previous holding in *White*, holding that "the [debtor's] *right* to a

homestead exemption becomes fixed at the time and the date of the filing." *White*, 266 U.S. at

311 (emphasis added).  Thus, the facts of *Myers* illustrate a refinement of *White* "when the state

law in question includes a condition on its application." *In re Zibman*, 268 F.3d at 303.

    In the case at bar, after filing his bankruptcy petition, the Debtor timely and properly

exempted the Property as his homestead pursuant to § 41.001 [Finding of Fact No. 2].  Like the

conditional aspect of the Nevada homestead exemption law, which the Supreme Court applied in

*Myers*, § 41.001 contains a condition on its application: it expressly contains the 6-Month Rule

and unambiguously states that if a debtor sells his homestead, then the sale proceeds become

non-exempt if not used within six months to purchase a new homestead.  Thus, on the date of the

filing of the Debtor's Chapter 7 petition, the property of his bankruptcy estate included a non-

exempt asset that was both prospective and contingent; namely, all proceeds from any future sale

of the Property that the Debtor did not use within six months of the sale to purchase a new

homestead.  Indeed, the broad definition of "property of the estate" compels this conclusion. *See*

11 U.S.C. § 541(a)(6); *see also Equinox Oil Co. v. Antill Pipeline Constr. Co. (In re Equinox Oil

Co.)*, 300 F.3d 614, 618 (5th Cir. 2002) ("Section 541 is read broadly and is interpreted to

'include all kinds of property, including tangible or intangible property, causes of action . . . and

all other forms of property currently specified in section 70a of the Bankruptcy Act.'").  Thus,

the Debtor's argument that the Proceeds are not "property of the estate" because Chapter 7 lacks

a companion provision to § 1306(a)(1) is unavailing.

There is a further point undermining the Debtor's argument that *Frost* is limited to Chapter 13 cases: *Frost* **never** mentioned § 1306(a)(1) as the basis for its decision. Rather, the Fifth Circuit focused on § 41.001 of the Texas Property Code in rendering its ruling. The Debtor, and at least one outside commentator,[5] seem to be at a loss to understand why the Fifth Circuit did not cite § 1306(a)(1) to justify its ruling in *Frost* and to limit the ruling to Chapter 13 cases. A review of certain pre-*Frost* opinions from the Fifth Circuit underscores why there should be no surprise that the Fifth Circuit, in *Frost*, did not use § 1306(a)(1) to limit its holding to Chapter 13 cases.

In *Zibman*, prior to filing their Chapter 7 petition, the debtors sold their homestead. *In re Zibman*, 268 F.3d at 300. On the date of the filing of their petition, the debtors had possession of the sale proceeds, and the six-month deadline for purchasing a new homestead had not yet run. *Id.* at 300-01. But, the six-month deadline expired 106 days after the filing of the petition, and the debtors had still not used the proceeds to purchase a new homestead. *Id.* The Chapter 7 trustee then objected to the debtors' claimed exemption of the proceeds from the sale of their homestead. *Id.* The bankruptcy court—and, on appeal, the district court—held that the exemption was permanent and ruled against the trustee. *Id.*

On appeal, the Fifth Circuit reversed. *Id.* It held that these courts incorrectly applied the "snapshot rule" articulated in *White*. *Id.* The Fifth Circuit clarified the Supreme Court's explanation of the "snapshot rule" in *White* by holding that **it is the controlling exemption statute at the time of filing, not the exempted character of the property, that undergirds the "snapshot rule."** *Id.* Under the "snapshot rule," a snapshot is taken of the facts and the

---

[5] Stephen W. Sather, *Fifth Circuit Erodes Protection for Texas Homesteads Sold After Filing*, (March 8, 2014) http://stevesathersbankruptcynews.blogspot.com/2014/03/fifth-circuit-erodes-protection-for.html ("The expanded definition of property of the estate in a chapter 13 case could justify the result in the *Frost* case. However, this was not discussed by the Court.").

applicable law as of the date of filing. *Id.* at 302.  Furthermore, it is not the exempt status itself

that carries through the entirety of a case, but rather the law governing the exemption.  *Id.*

*Zibman* thus explains that a debtor may not exempt his homestead under § 41.001 and then pick

and choose which provisions of that statute will govern his exemption during the pendency of his

Chapter 7 case.  *See Bradley v. Pac. Sw. Bank, FSB (In re Bradley)*, 960 F.2d 502, 506 n. 2 (5th

Cir. 1992) (citing *In re Dyke*, 943 F.2d 1435, 1438 (5th Cir. 1991)).  Thus, if a debtor chooses to

exempt his homestead under Texas law, he must accept § 41.001 in its entirety.  As the Fifth

Circuit in *Zibman* aptly observed: "When a debtor elects to avail himself of the exemptions the

state provides, he agrees to take the fat with the lean; he has signed on to the rights . . . *but also*

*to the limitations* . . . integral in those exemptions as well."  *In re Zibman*, 268 F.3d at 304

(emphasis added).  In light of the "snapshot rule" and § 41.001(c), the Fifth Circuit in *Zibman*

determined that the 6-Month Rule applied in that Chapter 7 case and awarded the homestead sale

proceeds to the trustee.  *Id.*

Eleven years later, the Fifth Circuit again held that the 6-Month Rule applied in a Chapter

7 case.  In *Morgan*, an unpublished opinion from 2012, a Chapter 7 debtor sold his homestead

after filing for bankruptcy and used the proceeds to pay off a lien held by his brother.  *Studensky*

*v. Morgan (In re Morgan)*, 481 F. App'x 183, 184 (5th Cir. 2012).  The trustee, after discovering

that the debtor had sold his house and used the proceeds to pay his brother, demanded that the

proceeds be paid back to the estate.  *Id.*  In response, the debtor filed an amended bankruptcy

schedule, claiming the proceeds as exempt under § 41.001(c) of the Texas Property Code.  *Id.*

The trustee objected, and argued that the proceeds were only exempt for six months, unless

reinvested in a new homestead.  *Id.*  The bankruptcy court overruled the objection, and the

district court affirmed.  On appeal, the Fifth Circuit considered whether the 6-Month Rule

applied to the homestead sale in this Chapter 7 case. *Id.* at 186. The Fifth Circuit pointed to *Zibman*, stating that § 41.001 "contains a temporal element that explicitly limits the exemption to six months." *Id.* at 187 (citing *In re Zibman*, 268 F.3d at 302). Thus, relying on its holding in *Zibman* that a bankruptcy filing did not change the application of the 6-Month Rule, the Fifth Circuit held that the debtor's failure to reinvest the proceeds in another Texas homestead within six months resulted in those proceeds losing their exempt status. *Id.* Therefore, in *Morgan*, the Fifth Circuit reversed the lower court's decision and rendered judgment for the trustee, requiring the debtor to turn over the proceeds to the trustee. *Id.*

These two cases—*Zibman* and *Morgan*—thus underscore why the Fifth Circuit, in *Frost*, did not rely on § 1306(a)(1) to justify its holding in that case and to limit § 41.001(c) to Chapter 13 cases. The Fifth Circuit had already held that the 6-Month Rule applies in Chapter 7 cases.

It is worth noting that in 1991, well before the issuance of *Zibman*, *Morgan*, and *Frost*, one of the undersigned judge's colleagues—the Honorable Karen K. Brown—issued a ruling that is entirely consistent with these three subsequent Fifth Circuit decisions. In *Evans*, a Chapter 7 debtor sold his rural homestead and used a portion of the proceeds to purchase a new urban homestead. *In re Evans*, 135 B.R. at 262-63. The debtor claimed the new urban homestead as exempt pursuant to Texas law, while attempting to claim as exempt the remaining proceeds that were not used toward the purchase of his new homestead. *Id.* Bankruptcy Judge Brown found that the exemption of the excess proceeds that the debtor attempted to claim was not allowed under § 41.001(c). *Id.* at 264. Judge Brown explained that, if the debtor's interpretation of § 41.001 was accepted, the holding would both: (1) expand the already generous provision of Texas homestead laws; and (2) "create windfalls for debtors who reinvest sale proceeds into homesteads of lesser value." *Id.* at 263. Thus, by applying the 6-Month Rule, Judge Brown—

just like the Fifth Circuit in *Zibman*, *Morgan*, and *Frost*—saw to it that creditors could garnish or seize any homestead sale proceeds not used to purchase a new homestead.

In sum, the Debtor's contention that *Frost* is limited to Chapter 13 cases is incorrect. Indeed, this Court concludes that in the Chapter 7 case at bar, the Fifth Circuit's holdings in *Frost* and *Zibman* constitute binding precedent that this Court must apply. *See Gonzalez v. Bayer Healthcare Pharm., Inc.*, 930 F. Supp. 2d 808, 816 n.6 (S. D. Tex. 2013) ("This Court is bound by the Fifth Circuit's ruling . . ."); *see also United States v. Zimmerman*, 529 F. Supp. 2d 778, 783 (S. D. Tex. 2007) ("This Court is bound by the Fifth Circuit's opinion . . ."); *see also Valladolid v. U.S. Bank Nat'l Ass'n*, Civil Action No. 3:13–CV–0965–K, 2014 WL 1303003, at *3 (N.D. Tex. Apr. 1, 2014) ("Merely because Plaintiffs do not agree with the Fifth Circuit's holding or analysis does not relieve this Court from its duty to follow binding authority."). Accordingly, the 6-Month Rule applies in this Chapter 7 case, and the Trustee is entitled to recover the Proceeds from the Debtor.

### G. The Debtor's Receipt of his Discharge Prior to the Sale of his Homestead does not Immunize the Proceeds from the 6-Month Rule

The Debtor emphasizes that he sold the Property only after he had first received his discharge in this case [Findings of Fact Nos. 4 & 8], and that it is unfair for him, having received his discharge, to still be subject to the clutches of the Trustee. There is no question that the purpose of an individual filing a Chapter 7 case is to procure a "fresh start" by obtaining a discharge. *Hill v. Jones (In re Jones)*, 327 B.R. 297, 306 (Bankr. S. D. Tex. 2005). But, it is important to remember that while one pillar of Chapter 7 is for the debtor to obtain a discharge, the other pillar is for creditors to be paid as much as possible from non-exempt assets. *Id.* Here, although the Debtor has received his discharge, the Chapter 7 case itself has not been closed. It is an "asset case" that remains open [Findings of Fact Nos. 3 & 8] and will be closed only after

the Trustee has recovered and liquidated all non-exempt assets and made distributions to creditors. Therefore, the Trustee must continue to fulfill his fiduciary duty to the estate by seeking to recover all non-exempt assets for the benefit of creditors. *In re JMW Auto Sales*, 494 B.R. 877, 881 (Bankr. S. D. Tex. 2013) (citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 266 (5th Cir. 2012)); *In re McCombs*, 436 B.R. 421, 439 (Bankr. S. D. Tex. 2010) (citing *Dodson v. Huff (In re Smyth)*, 207 F.3d 758, 761 (5th Cir. 2000)). Here, the Trustee is doing exactly that; the Proceeds are non-exempt and he is seeking to recover them on behalf of the estate for eventual distribution to creditors [Finding of Fact No. 7]. Therefore, even though the Debtor does have his discharge and his creditors cannot recover their claims against him personally, creditors are entitled to recover their claims from the Debtor's non-exempt assets, including the Proceeds.

Does this Court's holding mean that Chapter 7 trustees can **forever** make a claim on the proceeds from the sale of a debtor's homestead after six months has passed without the debtor reinvesting those proceeds in a new homestead? The answer is no. Once a Chapter 7 case is closed, any property that the trustee has not administered at the time of closing is abandoned to the debtor under § 554(c). The effect of abandonment is that "the trustee is… divested of control of the property because it is no longer part of the estate… Property abandoned under [§] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008). For example, if the case at bar had been closed after the Debtor had sold the Property but before six months had expired, the Trustee would have automatically abandoned any future right to the Proceeds after the expiration of six months, and the right to the Proceeds would have reverted to the Debtor on the date of the closing of the case. Thus, for the practicing bankruptcy bar trying

to counsel their debtor/clients on the application of the 6-Month Rule, the key date is **not** the discharge date, but rather the date that the case is closed.

### H. The Debtor's Suggestion that Trustees Should File a "Conditional Objection" to Homestead Exemptions in Every Chapter 7 Case is Unreasonable

The Debtor asks this Court to allow the exemption of the Proceeds because of the Trustee's failure to object to his validly claimed homestead exemption prior to the sale of the Property [Finding of Fact No. 2]. The Debtor argues that it would be unfair and inequitable to hold otherwise. This Court disagrees that it is unfair and inequitable to apply the 6-Month Rule simply because the Trustee lodged no objection to the Debtor's exemption of the Property. As the Fifth Circuit has articulated in *Frost*, such application is merely enforcing the entire exemption law passed by the Texas legislature—and there is nothing inequitable or unfair about that. Moreover, as a practical matter, if this Court were to accept the Debtor's argument, then necessarily all Chapter 7 trustees—to protect themselves from being sued by creditors for negligence—would have to conditionally object to validly claimed homestead exemptions **in every case** so as to protect against the potential scenario of a debtor subsequently selling his homestead, failing to reinvest the proceeds within six months, but then refusing to turn over the sale proceeds on the grounds that the trustee did not timely object to the homestead exemption. Trustees would have to file a pleading entitled, for example, "Conditional Objection to Debtor's Legitimate Exemption of [*Description of Real Property*] to Preserve the Right to Seize the Proceeds from Any Future Sale of the Homestead if the Sale Proceeds Are Not Reinvested within Six Months." Such an objection would languish on the docket for months, if not years, and would generally not be disposed of until the earlier of: (1) the 181st day after any sale of the homestead; or (2) the date the case is closed. Requiring trustees to file such a conditional objection would be both cumbersome and burdensome on trustees and bankruptcy court dockets

alike. This Court will not issue a ruling that would wreak such havoc upon the bankruptcy system.

## IV.   CONCLUSION

This Court declines the Debtor's invitation to exempt the Proceeds from the bankruptcy estate on the basis that *Frost* is inapplicable to Chapter 7 cases. Rather, this Court is bound by Fifth Circuit precedent and concludes that *Frost* applies in this Chapter 7 case. Moreover, § 41.001 sets forth both the scope and limitations of a Texas homestead exemption, and the "snapshot rule" in bankruptcy law instructs courts to apply the law applicable at the time of the filing. As the Fifth Circuit in *Zibman* noted, when a debtor avails himself of the Texas homestead law, the debtor has to take the "fat with the lean." *In re Zibman*, 268 F.3d at 304. Here, the Debtor availed himself of the generous Texas homestead exemption,[6] and is therefore bound by both its provisions and its limitations, including the 6-Month Rule. Accordingly, when the Debtor failed to reinvest the Proceeds in a new homestead within six months of selling the Property, the Proceeds lost their exempt status. The Debtor's argument of "once exempt, always exempt" is simply incorrect.

The Debtor argues that public policy demands "finality" and "certainty" for debtors to obtain a "fresh start" and that a denial of the Motion would undermine these policies. While the Debtor accurately depicts the underlying policies of bankruptcy in general, his argument says little about how the Texas homestead exemption law, including the 6-Month Rule, contravenes these policies. Indeed, certainty and finality are evidenced in the language of § 41.001(c), which provides a hard-and-fast six-month deadline for debtors to invest the sale proceeds in a new

---

[6] *Compare* TEX. PROP. CODE § 41.001 (providing a nearly unlimited exemption) and 11 U.S.C. § 522(d)(1) (limiting exempted real property to the value of $22,975); *In re Peters*, 91 B.R. 401, 403 (Bankr. W. D. Tex. 1988) ("The Texas homestead exemption, based on size rather than value, is among the most generous, if not the most generous in the United States.").

homestead; if any debtor has not done so by day 180, then finality exists on day 181, and the proceeds become non-exempt.

For all of the reasons set forth above, this Court holds that the 6-Month Rule applies in this Chapter 7 case, and that the Proceeds became non-exempt on December 19, 2013—which was the 181st day after the sale of the Property. Thus, on December 19, 2013, title to the Proceeds automatically passed from the Debtor to the Trustee, and the Debtor had a duty to turn over the Proceeds to the Trustee. *In re Cooper*, 426 B.R. 227, 240 (Bankr. N. D. Tex. 2010) ("Additionally, since the proceeds from the sale of the 480 Property and the 470 Property are property of the bankruptcy estate, this court finds that [the debtor], pursuant to section 542(a) of the Bankruptcy Code, shall immediately turn these proceeds over to the Trustee in the amount of $46,116.31 (plus pre-judgment and post-judgment interest as allowed by law).").

An order consistent with this Opinion will be simultaneously entered on the docket.

Signed this 4th day of August, 2014.

Jeff Bohm
Chief United States Bankruptcy Judge